UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:24-CR-344-LLA |
| v. ) | |
| ) | |
| MICHAEL KENNY ) | January 14, 2025 |
| ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

On August 14, 2024, Defendant Michael Kenny and his brother pled guilty to two misdemeanor charges in an Information previously filed by the Government: (1) Disorderly and Disruptive Conduct in a Capitol Building, in violation of Title 40 U.S.C. § 5104(e)(2)(D); and (2) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, U.S.C. § 5104(e)(2)(G). On January 28, 2025, Mr. Kenny will appear before the Court for sentencing. Michael Kenny asks for no prison time, consistent with sentences imposed in similar cases arising from January 6th, with a period of probation that includes conditions the Court deems necessary pursuant to 18 U.S.C. § 3553(a). He intends to pay his restitution and special assessment that day.

In considering the parsimony clause and the factors set forth in 18 U.S.C. § 3553(a), certain facts stand out. To being, before January 6, 2021, Mr. Kenny was a good citizen. He worked, lived with family, and was not one to seek out trouble.

Mr. Kenny's father had not been part of his life for approximately 10 years, including during the rise of the first Trump administration and the events of January 6th. Mr. Kenny recalls his father abusing alcohol when he was still in the home, although he does not attribute any particular impact on the family to that abuse. Mr. Kenny relies on a

close relationship with his mother and his brother, with whom he shares an employer and works opposite shifts to ensure that there is adequate management coverage and he can trust the other manager to do the job right.

On January 6, 2021, he started the day with intentions that are consistent with the foundations of America. He traveled with his brother from their home state to the Nation's Capital to see the President speak and show their support. Other than riding the train and attending the rally, he had had no plans or expectations for that day.

The train arrived too late for them to see the President speak. They headed out from the train station to see if anything was still going on, when they saw the crowds building at the Capitol. They went in that direction, gathering with other supporters of the President and getting closer and closer to the building.

By the time they reached the Capitol's Upper West Terrace at approximately 2:30 p.m., they were part of a crowd of seemingly thousands of people. Earlier crowds already had forced their way past barriers and Capitol Police, reaching the exterior façade of the building ahead of the Kennys, at approximately 2:00 p.m. Shortly after, and, again, before the Kennys were there, individuals in the crowd forced entry into the Capitol, including breaking windows and assaulting police while other members of the crowd urged them on. At approximately 2:20 p.m., members of Congress and the Vice President were instructed to leave the voting chambers and promptly did so.

At the exterior, Mr. Kenny could see a steady stream of people entering and leaving the Capitol. At approximately 2:35 p.m., they made the wrong choice and joined the stream heading into the building. They quickly reached the Rotunda. They milled

around for a bit, walking and talking with others. At 3:05 p.m., they left the Rotunda, exiting the Capitol within approximately two minutes.

After January 6, 2021, Mr. Kenny was a good citizen. He worked, spent time with family, and did not seek any trouble. Eventually, law enforcement questioned his brother, who admitted that the two had been in the Capitol that day. Nearly three years after the event, Mr. Kenny and his brother were arrested in Connecticut, on December 21, 2023. He agreed to plead guilty before the Government needed to obtain an indictment, saving the Government and the grand jury resources.

As discussed below, Mr. Kenny's history and characteristics weigh heavily against the need for prison. Mr. Kenny learned from this experience, and he is extremely unlikely to let himself be in such circumstances again, let alone engage in the conduct that he committed. That said, he understands there will be consequences and is ready to accept them.

## SENTENCING

Mr. Kenny's case is far from an isolated one. Just yesterday, the Government announced an indictment of a Kentucky man, charging him with attempting to assault law enforcement that day by alleged spraying bear spray at a line of officers prior to the 2:00 p.m. breach.[1] More than 1,500 people have been prosecuted. There are nearly too many cases to compare.

The clearest guidance rests in the sentencing statute, 18 U.S.C. § 3553(a). Under § 3553(a)'s "parsimony clause," it is the sentencing court's duty to "impose a sentence

---

[1] A press release is available via District of Columbia | Kentucky Man Indicted for Assaulting Law Enforcement and Other Charges During Jan. 6 Capitol Breach | United States Department of Justice.

sufficient, but not greater than necessary to comply with the specific purposes set forth" at 18 U.S.C. § 3553(a)(2). *United States v. Dorvee*, 604 F.3d 84, 93 (2d Cir. May 11, 2010) (citation omitted). Section 3553(a) provides a litany of factors for the Court to consider in making its determination of a sufficient sentence, of which the following are the most pertinent here:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed –

   A.  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   B.  to afford adequate deterrence to criminal conduct;

   C.  to protect the public from further crimes of the defendant; and

   D.  to provide the defendant with needed education or vocation training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentence available;

   . . .[1]

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . .

Applying those factors here, the balance tips in favor of a non-incarceration sentence. On the one hand, there is no overstating the seriousness of the events of January 6th. For some involved, the actions were, plain and simple, an assault on the

---

[1] Subsections (4) and (5) reference the Sentencing Guidelines and its policy statements. Because this case involves misdemeanor charges, the Guidelines are not at issue. See PSR, ¶ 29.

United States government, both as to its participants but also its procedures and institutions.

For Mr. Kenny, January 6th was a train ride, a rally that went other than he intended, and a bad decision to enter and stay in the building. He went somewhere that he should not have been, and he hoped that the process would yield a different outcome than it eventually did. He trespassed and stayed inside for 30 minutes.

But he also did not damage any property or assault anyone. He did not touch a member of law enforcement or cheer on direct threats to their safety. He did not, to his knowledge, encounter a political official or someone on the premises to assist in carrying out the certification process.

Moving beyond the events of January 6th and Mr. Kenny's participation, every other consideration points towards no jail time. He has no prior criminal record. See PSR, ¶¶ 27-28. Accordingly, the impact of being prosecuted, convicted, and sentenced serves punitive and deterrent purposes, with prison time being more than is necessary to serve those purposes.

Mr. Kenny has employment that likely will be lost if he is incarcerated for more than an extremely short period of time, *e.g.*, a weekend in jail or a day in U.S. Marshall's custody.

Mr. Kenny has stopped using marijuana. See PSR, ¶ 47. To the extent that drug use impacted his decision-making in connection with January 6th, that issue has been addressed. The corresponding risks of recidivism have been reduced.

5

Mr. Kenny has been compliant with his release conditions. To some extent, the loss of liberty associated with supervision constitutes a form of punishment.[1] More importantly, Mr. Kenny has demonstrated that not only can he live a law-abiding life, he has demonstrated that he respects the law and would be a good candidate for a term of probation. This approach would serve the purposes of deterrence and promoting rehabilitation. The foregoing also leads to the conclusion that there is no meaningful need to incapacitate Mr. Kenny so as to protect the public.

None of that is intended to minimize the seriousness of the events of January 6th or that, by entering into the Capitol, Mr. Kenny contributed to them. The circumstances of January 6th arguably are among the most serious domestic events in the country's history. The events that transpired that day were not among ones that Mr. Kenny foresaw or even

---

[1] The Supreme Court has recognized the significant impact of probation on a person's liberty.

> Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights,* 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); internal quotation marks omitted)). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court.

*Gall v. United States*, 552 U.S. 38, 48 (2007) (footnote omitted); *see also id.* at n. 4 (citing 1 N. Cohen, THE LAW OF PROBATION AND PAROLE § 7:9 (2d ed. 1999) ("[T]he probation or parole conditions imposed on an individual can have a significant impact on both that person and society .... Often these conditions comprehensively regulate significant facets of their day-to-day lives. . . ").

contemplated. He thought he was going to a political rally. He recognizes the wrongness of his decisions and the danger that comes when a crowd turns into a mob and a loud protest morphs into a riot. He now bears the label of having been part of something that he would never condone. The Court can reasonably expect that Mr. Kenny will not find himself in these circumstances again.

## CONCLUSION

For all the reasons stated herein, Mr. Kenny requests that the Court impose a term of probation with those conditions that the Court deems sufficient, but not greater than necessary, to promote Mr. Kenny's continuing the law-abiding life from which he strayed briefly on January 6, 2021.

Respectfully submitted,
  MICHAEL KENNY

/s/Charles F. Willson/s/_____
By Charles F. Willson (# ct24129)
FEDERAL DEFENDER'S OFFICE
10 Columbus Boulevard, 6th Floor
Hartford, CT 06106
Tel: (860) 493-6260 Fax:
(860) 493-6269
email: Charles_Willson@fd.org

## CERTIFICATION OF SERVICE

This is to certify that on January 14, 2024, a copy of the foregoing was filed with the Court via the CM/ECF system, by which counsel to all parties, including the Government, will be notified of and have the opportunity to review this filing.

/s/Charles F. Willson/s/
Charles F. Willson